## KNICKERBOCKER ICE COMPANY v. SURPRISE.

[No. 7,482. Filed February 2, 1912. Rehearing denied June 29, 1912. Transfer denied April 22, 1913.]

1. INJUNCTION.—*Inadequacy of Remedy at Law.—Complaint.— Sufficiency.*—A complaint, alleging that plaintiff is the owner of certain real estate, a part of which is covered by water on which ice forms, that defendant is engaged in cutting and removing ice, that from time to time in past years the defendant has cut and removed ice on plaintiff's land, and is now engaged in cutting and removing ice therefrom, and that unless defendant is restrained, its acts will make necessary a multiplicity of suits, and that the enforcement of plaintiff's rights at law or by criminal prosecutions would produce breaches of the peace and other improper conditions, states facts showing that plaintiff has no adequate remedy at law, and is sufficient to entitle him to injunctive relief. p. 291.

2. INJUNCTION.—*Right to Relief.—Continuous Trespass.—Inadequacy of Legal Remedy.*—Injunctive relief may .be granted, even though plaintiff may have a legal remedy, if the trespass is continuous in its nature, or consists of constantly recurring acts, which would render resort to the legal remedy impractical because of a multiplicity of suits and the consequent smallness of the damages that could be recovered in each case when compared with the expense entailed. p. 291.

3. COURTS.—*Rules.—Validity.*—Courts have the inherent power to make rules for the proper conduct of their business, and which do not conflict with the statutes, and such rules, when made, are obligatory both upon court and litigants. p. 292.

4. VENUE.—*Change of Venue.—Time of Application.*—Where the rules of the trial court provided that a motion for change of venue must be filed three days before the date of trial, except when it appears by affidavit that the reasons for the change were not known before that time, a defendant, though not served with summons, was not entitled to a change of venue in the absence of a showing why the application was not filed within the prescribed time, where the record disclosed defendant's prior appearance by counsel and a continuance of the cause by agreement of the parties. p. 292.

5. TRESPASS.—*Trespass to Real Estate.—Elements of Recovery.— Title.*—Plaintiff need not prove title to real estate in order to recover for trespass, proof of possession being sufficient. p. 294.

6. NAMES.—*Idem Sonans.—Names Within Rule.*—Courts look to the sound of names rather than to their spelling, and the names "Valentine Schuetz" and "Falladine Schutz" are *idem sonans*, so that it will be presumed that "Valentine Schuetz", whose land was divided in a partition proceeding, was "Falladine Schutz" to whom the land had been deeded. p. 295.

7. BOUNDARIES.—*Land Bordering on Lake.—Conveyance by Plat.*— Where land bordering on a lake has actually been surveyed, platted and conveyed as a "lot" containing a number of acres of land, the grantee takes the land under the water far enough from shore to make out the full subdivision in which the land is situated. pp. 295, 300.

8. PARTITION.—*Conveyances.—Title Acquired.*—Where the lands of a decedent were partly covered by the waters of a lake, and the commissioners appointed to partition the same among those to whom it had been devised, divided the land by a road into a large tract not fronting on the water's edge, and into a small tract adjoining the lake, and gave to each devisee a share in the large tract and also a strip having water on a part thereof, and in their report described the lands so set apart as "tracts" instead of by metes and bounds it will be presumed that such commissioners partitioned all of the land of the owner, so that the devisees, in receiving land described as "tracts between the road and the lake", thereby acquired the land under the waters of the lake. pp. 296, 297.

9. BOUNDARIES.—*Land Bordering on Lake.—Conveyance by Metes and Bounds.*—If a description is by metes and bounds, and indicates the shore of a lake as one of the boundary lines, the deed conveys no rights to the land covered by the waters of the lake. p. 297.

From Lake Circuit Court; *W. C. McMahan*, Judge.

Action by William Surprise against the Knickerbocker Ice Company and others. From a judgment for plaintiff, the defendant company appeals. *Affirmed.*

*Doran & Conboy, Elias D. Salsbury* and *Benjamin O'Hara,* for appellant.

*Otto J. Bruce* and *August A. Bremer,* for appellee.

IBACH, P. J.—This was a suit to perpetually enjoin appellant, R. H. Adams, and Charles Nieman from entering upon appellee's real estate and from cutting ice thereon, and for damages for cutting and removing ice therefrom. The case was dismissed as to Adams and Nieman before the filing of any pleadings by defendants. Upon trial had before the court without jury, judgment was rendered for $10 damages and costs, and an injunction was granted according to the prayer of the complaint. Three grounds of error are argued, (1) that the complaint is insufficient, (2) that the court erred in overruling appellant's motion for a change of venue, and, (3) that the evidence does not show that appellee had title to the real estate where the ice was cut.

The complaint first alleges that the plaintiff is the owner in fee of certain described real estate in Lake County, Indiana. The other averments of the complaint follow: "That parts and portions of the said described real estate is covered by shallow water upon which ice forms and from which ice can be cut and removed during such weather as keeps the water frozen and congealed. That the defendant Knickerbocker Ice Company is now engaged in cutting and removing ice from the said water upon the real estate of the plaintiff. That during the year 1902, the said defendant, Knickerbocker Ice Company, cut and removed ten thousand tons of ice from the water on the said described real estate of the plaintiff, which ice then and there was reasonably worth the said sum of twenty-five cents per ton; that

the said defendant company is now cutting and removing ice from the water on the said described real estate of this plaintiff, and during the month of February, 1907, the said company did cut and remove ten thousand tons of ice from the water on the said described real estate of this plaintiff. That the said defendant R. H. Adams is the superintendent of the said defendant and is now engaged in directing the men in the employment of the said company; and the defendant Charles Nieman is the field foreman who under the said superintendent is in the immediate charge of the men engaged in removing the said ice. That the said defendants are now cutting and removing ice from the water of the plaintiff's said real estate, and are now engaged in working upon, across and over the plaintiff's said real estate bringing ice from other tracts of real estate to and upon the plaintiff's said real estate, and removing such ice so brought from other tracts of real estate across and over the plaintiff's said real estate. And the defendants are now threatening to and will continue to cross and recross the plaintiff's said real estate and move ice across and over the plaintiff's said real estate unless restrained and enjoined from so doing. That the defendants from time to time in years past have cut and removed ice from the water upon the plaintiff's said real estate, and have cut and removed across and over the plaintiff's said real estate ice brought from elsewhere, and the defendants are now engaged in cutting and removing from the water on the plaintiff's said real estate and in removing other ice brought from elsewhere upon, across and over the plaintiff's said real estate and are now threatening to and will continue to do the acts and things aforesaid unless enjoined and restrained from so doing. That each and all the acts of the said defendants are without right, permission or authority of this plaintiff. That unless the defendants are restrained and enjoined from the doing of each and all of the several

acts aforesaid a multiplicity of actions and suits will be necessary from time to time, causing a large and unusual expense of money, time and annoyance. That the said defendants employ large numbers of persons, several hundred persons in the doing of the said acts, and that it is impossible to cause the arrest of each and all thereof from time to time as the various entries are made and threatened to be made upon the plaintiff's property. That the enforcement or attempted enforcement of the plaintiff's rights at law or in a criminal court would cause breaches of the peace, affrays, riots and other improper conditions. That the plaintiff has already been damaged in the sum of $1000, and has heretofore resulted in former lawsuits for like damages and a multiplicity of suits will be necessary in the future unless the defendants and each of them are restrained and enjoined from the doing of the several acts which the said defendants are doing and threatening to do. That the plaintiff has no adequate remedy at law and will sustain irreparable damage and loss unless the said defendants are enjoined from the doing of the acts now being done and those threatened. Wherefore the said plaintiff asks judgment for the sum of one thousand dollars, and that the defendants and each and all of them be forever and perpetually enjoined from entering upon the plaintiff's said real estate or any part or portion thereof, and from cutting and removing any ice from any part or portion of the water on said real estate and that they be enjoined from bringing and removing ice from elsewhere upon, across and over the plaintiff's said real estate and that the defendants and each of them be forever enjoined from the doing of each and all of the said acts either individually or by and through the means of agents and servants and for any and all other proper relief.''

We are first called upon to determine the sufficiency of the complaint. It is not always an easy matter to distinguish

1. between what constitutes a mere naked trespass for which there is a full and adequate remedy at law and what constitutes such a degree of irreparable injury as will authorize the court to interfere and

2. grant injunctive relief. We consider the complaint before us free from doubt. In the case of *Lembeck* v. *Nye* (1890), 47 Ohio St. 336, 24 N. E. 686, 8 L. R. A. 578, 21 Am. St. 828, a suit to enjoin the defendants from doing certain acts upon the land covered by water belonging to the plaintiff, the court said: "The agreed statement of facts shows that the defendant Nye is insolvent, and the financial condition of Andrews doubtful; but aside from this, and were they both solvent and fully able to respond to any damages that might be recovered against them in actions of trespass, yet, it is apparent from the whole record that such actions would not afford an adequate remedy for the violations of the rights of the plaintiff in error in the past; and those threatened in the future were, and are, during certain seasons of the year of daily, if not of hourly, occurrence under the claim of a right to do so; besides the injury resulting from each separate act would be trifling, and the damages recoverable therefore scarcely equal to a tithe of the expense necessary to prosecute separate actions therefor." It has also been announced many times and by different courts and law writers that "though property owners have a remedy at law for the intrusion upon their rights, yet as the trespass is continuous in its nature, they can have an injunction to prevent a multiplicity of suits, and can recover the damages they have sustained as incidental to the equitable relief." 1 Joyce, Injunctions §10. See, also, 1 High, Injunctions §697; 1 Pomeroy, Eq. Jurisp. (2d ed.) §243; *Tantlinger* v. *Sullivan* (1890), 80 Iowa 218, 45 N. W. 765. 1 High, Injunctions at §702 says: "* * * when the wrongful acts continued or threatened to be continued may become

the foundation of adverse rights and may occasion a multiplicity of suits to recover damages, the case presents such equitable features as to entitle complainant to the aid of an injunction.'' This doctrine is well supported by *Shaffer* v. *Stull* (1891), 32 Neb. 94, 48 N. W. 882; and *Poirier* v. *Fetter* (1878), 20 Kan. 47. The courts have also decided that where the acts of trespass are constantly recurring, but the injury resulting from each separate act is trifling, so that the damages recoverable for each act would be very small when compared with the expense necessary to prosecute separate actions at law therefor, relief will be granted owing to the inadequacy of the legal remedy. See, also, *Lembeck* v. *Nye, supra*. Even if an injunction were not asked, the complaint sufficiently states a cause of action as alleging a trespass against appellee on the part of appellant, and asking damages therefor, and will withstand demurrer for that reason. The trespass alleged is a continuing one, which would on the facts stated furnish grounds for many causes of action, and we know of no adequate remedy at law open to appellee. He is not obliged to confine himself to his remedy at law and bring a new action every time this continuing trespass is repeated. The complaint states facts sufficient to obtain the relief asked. *Wirrick* v. *Boyles* (1910), 45 Ind. App. 698, 91 N. E. 621; *Brenner* v. *Heiler* (1910), 46 Ind. App. 335, 91 N. E. 744; *Owens* v. *Lewis* (1874), 46 Ind. 488, 15 Am. Rep. 295; *Miller* v. *Burket* (1892), 132 Ind. 469, 32 N. E. 309; *Bonnell* v. *Allen* (1876), 53 Ind. 130; *Pence* v. *Garrison* (1884), 93 Ind. 345; *Field* v. *Holzman* (1884), 93 Ind. 205; *Tantlinger* v. *Sullivan, supra; Lembeck* v. *Nye, supra*.

By a rule of the Lake Circuit Court, motions for

3. change of venue ''must be filed at least three days before the day the case is first set for trial,'' except

4. when the reasons for the change are not known within the time specified, and in such case this must be

shown by affidavit. The court found that appellant's motion for change of venue was not made three days before the cause was first set for trial, no reasons were given or attempted to be given why the motion was not filed at the specified time, and the court overruled the motion for non-conformity to the rule of the court. Courts have the power inherently to make rules not in conflict with the statutes of the State for the proper conduct of their business, and it is not only their right but their duty to enforce them, and they are obligatory upon the court, and upon the parties to causes pending before it. *Smith* v. *State, ex rel.* (1894), 137 Ind. 198, 36 N. E. 708; *Magnuson* v. *Billings* (1899), 152 Ind. 177, 52 N. E. 803; *Rooker* v. *Bruce* (1908), 171 Ind. 86, 85 N. E. 351; Elliott, App. Proc. §7. The record in the present case sets out the summons and the sheriff's return thereto, which show no service upon the Knickerbocker Ice Company, and appellant contends that its first appearance before the court, as shown by the record, was when the motion for change of venue was filed. The case of *Truitt* v. *Truitt* (1871), 38 Ind. 16, is cited to the effect that a rule of court should not operate on a party who has entered his appearance after the day the cause is docketed for trial, and had not previously subjected himself to the jurisdiction of the court, as the rules of court can operate only on parties who are in court. This holding is not applicable to the facts before us, for the record shows that some fourteen months before the change of venue was asked, the parties appeared by counsel, and a continuance was granted by agreement, and that the costs occasioned by such continuance were assessed to the defendant Knickerbocker Ice Company. This entry in the record shows that appellant had appeared to ask a continuance before its appearance to file a motion for change of venue, and that it was subject to the jurisdiction of the court, and therefore to the rules of the court.

The point most strongly argued by appellant is that the

evidence does not show title in appellee to the land where the trespass was committed. We may prefix discussion of this question by saying that it is not necessary to prove title in order to recover against a trespasser, but only to prove possession. Appellant admits the trespass. Its witnesses, among them its officers, speak of the realty where the trespass was committed as appellee's property. The question of title seems not to have been raised until appeal. The real estate, from entering upon which appellant was enjoined, consists of two tracts, the larger of which is situated on the east side of Cedar Lake, in Lake County, Indiana, and contains eighty acres, some fifty acres of which is dry land, and the remaining portion of which is covered with the waters of Cedar Lake. Adjoining this is a strip some 2500 feet in length and 140 feet in width, which extends from the aforesaid tract on the east side to the railroad track west of the lake, all of this strip except about an acre and a half on the west shore being covered with the waters of the lake. Appellant at the time of the trespass had leased the portion of the lake south of this strip and north of it for the purpose of cutting ice. In order to bring ice from the north field to its ice house at the south end of the lake, appellant cut a channel some twenty feet wide through this 140-foot strip of ice in appellee's possession, and rafted ice through this channel. The only ice carried away was the ice taken from the channel. Appellant does not question appellee's title to the larger tract of real estate on the east side of the lake, but only to the 140-foot strip. To prove title to this, there was introduced in evidence a warranty deed from Barbara Weis and Daniel Weis her husband to appellee, the record of the court in the partition proceedings of the heirs of Valentine Schuetz, in which this strip of land was set off to Barbara Weis, and a warranty deed from George Emerling and Catherine Emerling his wife, Clemens Emerling and Magda-

lena Emerling his wife, to Falladine Schutz, which conveyed to him the entire land embraced in the partition proceeding, and other land adjoining, which had been sold off by Valentine Schuetz before his death. It is argued that it is not shown that Falladine Schutz ever parted with the title in the said real estate. However, courts look to the sound of names rather than to their spelling, the names Valentine Schuetz and Falladine Schutz are *idem sonams,* and the court will presume that the Valentine Schuetz whose land was divided in the partition proceedings was the same Falladine Schutz to whom the land was deeded by the Emerlings. *Lilly* v. *Somerville* (1895), 142 Ind. 298, 40 N. E. 1088; 29 Cyc. 273. It is apparent that the name Valentine Schuetz is of German derivation and a scrivener attempting to represent in English spelling the name Valentine from hearing its German pronunciation, might easily write it Falladine. Furthermore, in the partition proceedings the court found that certain named persons, among them Barbara Weis, were the owners as tenants in common of the real estate in question as devisees of Valentine Schuetz.

The deed from the Emerlings to Schutz conveyed lots one and two and the west half of the northwest quarter of section 34 in township 34 north of range nine west, containing 199 acres more or less, on July 21, 1864.

It is the rule that where the land bordering on a lake has actually been surveyed, platted, sold and conveyed as a "lot" containing a number of acres of land, the grant takes the land under the water far enough from shore to make out the full subdivision in which the land is situated. In this case the land was surveyed and is described as lots one and two of section 34, therefore the deed conveyed the land underneath the waters of the lake to the section line of section 34. The land owned by appellee to the east side of the lake in section 35 extended to the sec-

tion line, and there adjoined the tract which was deeded to Schutz by the Emerlings. *Tolleston Club, etc.,* v. *State* (1895), 141 Ind. 197, 38 N. E. 214, 40 N. E. 690; *Kean* v. *Roby* (1896), 145 Ind. 221, 42 N. E. 1011; *Mason* v. *Calumet Canal, etc., Co.* (1898), 150 Ind. 699; *Tolleston Club, etc.,* v. *Claugh* (1896), 146 Ind. 93, 43 N. E. 647.

The next question is whether the order of the commissioners in the partition proceeding is sufficient to convey the riparian rights of Valentine Schuetz to Barbara Weis. In the deed from her and her husband to appellee the land conveyed is described as ''a part of the northeast quarter of section 34, township 34 north, range nine west 2nd P. M., it being that part of said quarter section lying east of the road as laid out by the commissioners of the Lake Circuit Court at its September term, 1895, in the partition of the Valentine Schuetz estate, which was set off to Barbara Weis in the said partition, as shown and designated on the plat included in the report of said commissioners. The grantors also convey hereby all riparian rights, ice and water privileges belonging to them adjacent to said land.'' Before the death of Valentine Schuetz he had sold off portions of the land conveyed by the Emerlings to him, next to the shore of the lake. The commissioners who partitioned the remaining lands first divided them by a road into a large tract not fronting on the water's edge and a small tract adjoining the lake. Each devisee was given a share in the large tract, and then each was given a small strip having water on a part thereof, it seemingly being the intention to thus make each one a riparian owner, and give to each one ice and water privileges, which they could not have had if the tract had been divided otherwise. The report of the commissioners does not describe the lands set apart by metes and bounds, but simply as ''tracts.'' After describing the tracts set aside in the larger division, the report reads, ''We further set apart to'' (cer-

tain devisees, certain tracts) " Barbara Weis the tract next adjoining on the south 140 feet wide; to   *   *   *   all said latter tracts being between the road aforesaid and Cedar Lake; and for further description we herewith file a plat of the tracts of land so partitioned by us as a part of this report."

Appellant cites *Brophy* v. *Richeson* (1894), 137 Ind. 114, 36 N. E. 424, to support its contention that this order does not convey riparian rights.   It is true that if a description in a deed is made by metes and bounds, and indicates the shore of a lake as one of the boundary lines, such deed conveys no rights to the land covered by the waters of the lake.   But in the report of the partition commissioners, the tracts set off are not described by metes and bounds.   These commissioners were appointed to partition the entire real estate devised by Valentine Schuetz in section 34, which extended, as we have seen, to the east line of section 34, and the presumption is that they performed their duty, and partitioned all of it, and did not leave the devisees as tenants in common of a part of the property which they were appointed to partition.   The purpose of their dividing the land east of the road by them established into small tracts seems to have been to give to each devisee a share in the ice and water privileges held by their testator.   The words of description used in the report are simply a convenient method of identifying the lands set aside, not a limitation, and in the absence of a clear expression limiting the tract set off to the land not covered by the lake, and clearly making the lake shore a boundary, the report of the commissioners will be held to have transferred the whole of the interest of Valentine Schuetz, and the devisees who received lots described as "tracts between the road and the lake," will be held to take the lands covered by the waters of the lake between the shore and the section line to which their testator's land

extended. Therefore Barbara Weis became the owner of a strip of land 140 feet wide, extending from the road laid out by the commissioners to the east section line of section 34, and her rights in this strip she fully conveyed to appellee by deed.

We hold that the evidence discloses a complete and unbroken chain of title extending from the Emerlings to appellee in the land where the trespass was committed, does not show that any other person has any claim of title to such land, and shows that appellee was in actual possession of the real estate under claim of title, which in itself is sufficient against a trespasser.

The judgment is affirmed.

## On Petition for Rehearing.

Ibach, J.—Appellant urges that the court erred in holding that lot 2 of section 34 extended to the section line, and bases its contention upon the opinion in the case of *Stoner* v. *Rice* (1889), 121 Ind. 51, 22 N. E. 916. In that case the court said, "The true doctrine to apply in the disposition of such land as is covered by the body of such lakes, we think, is that the government in making surveys included in such surveys *all* (our italics) the land within the district surveyed, and if there was a lake or large pond which covered a part of a subdivision it was meandered out, and the dry land in such subdivision designated as a fractional subdivision, or lot; that in the purchase of such fractional subdivision, or lot, the purchaser took title to it as a riparian owner, with the right to the land as the water receded within the boundary lines of the subdivision conveyed to the purchaser. In other words, the purchaser acquired title to all the land within the subdivision, though it was described as a fractional subdivision, or lot. The authorized survey divided all the land within the district into subdivisions."

In order to better present the questions involved in the

discussion of the point raised by the petition for rehearing, we annex the following diagram, which fairly sets out the situation.

X Approximate spot where trespass occurred.

A, B, C and D, corners of Sec. 34; B, H, I and C, corners of W½ Sec. 35; A, G, F and E, corners of Schutz lands partitioned; M, G, L and K is lot 1, Sec. 34; L, F, J and K is lot 2, Sec. 34; C, R, S and T is lot 4, Sec. 34; N, O, P and Q is lot 2, Sec. 35.

As appellant points out to the court, if it were held that all the lots extended to the section line, the east half of the northeast quarter of section 34 would belong both to the owners of lots 1 and 2, and to the owner of lot 4. Manifestly such a result would be incorrect. On the other hand, if we apply the rule insisted upon by appellant, that the lots extend under the water only to the nearest subdivision line, that is, in the case of lots 1 and 2, the quarter-quarter section line, then the east half of the northeast quarter of section 34 would not have been included in any portion of the survey. To reach this result would be as much an error as the former. There must be some rule which will allow us to escape this dilemma of adjudging that these lands

were twice included in the survey, or were not included at all.

By the government system of land surveys, sections may be subdivided into subdivisions of various classes, namely— half sections, quarter sections, half-quarter sections, and quarter-quarter sections. 2 U. S. Comp. Statutes, §§2395-2397. Where the lands bordered on a lake, fractional subdivisions were laid out and called lots, the number of acres contained therein being designated by the number of acres of dry land. It is held by the case of *Stoner* v. *Rice, supra,* and by the cases cited in the opinion, that where all the land in the district was surveyed the holders of the fractional subdivisions or lots took under the water to make out the full subdivision in which the dry land was situated. The question then becomes, If all the land was surveyed, in which lot was the land under water in the east half of the northeast quarter of section 34 included? Lot 4 is manifestly laid out as a fractional half-quarter section, in the east half of the southeast quarter of section 34. It would clearly be wrong to extend it into another quarter section by holding that the lands in the east half of the northeast quarter were attached to it. Lots 1 and 3 are laid out in the north half of section 34. Lot 2 includes the southeast quarter of the northwest quarter, and the dry land portion of the south half of the northeast quarter. We think it would be error to hold that this lot does not include the entire south half of the northeast fourth. The lands in the east half of the northeast quarter must have been, under the very holding upon which appellant relies, included in the survey, and we cannot with propriety hold that the lands in the southeast fourth of the northeast fourth could be included in any other than lot 2. It follows that the court did not err in the holding in the original opinion that lot 2 extended to the section line.

Petition for rehearing overruled.

NOTE.—Reported in 97 N. E. 357; 99 N. E. 58. See, also, under (1) 22 Cyc. 928; (2) 22 Cyc. 836; (3) 11 Cyc. 740, 742; (4) 40 Cyc. 147, 150; (5) 38 Cyc. 1017; (6) 29 Cyc. 272; (7) 5 Cyc. 893; (8) 30 Cyc. 320; (9) 5 Cyc. 894. As to the authority of courts to enact rules, see 41 Am. St. 639. As to *idem sonans* and presumptions as to the identity of names, see 100 Am. St. 323. As to waters as boundary lines, see 27 Am. St. 56. On the question of the title to land under lakes, see 42 L. R. A. 175. And for boundary on lake, see 51 L. R. A. 178.