ROYER ET AL. *v*. STATE OF INDIANA, EX REL. BROWN.

[No. 9,255. Filed April 5, 1916. Rehearing denied June 27, 1916. Transfer denied November 24, 1916.]

1. APPEAL.— *Briefs.— Omissions.— Supplied by Adverse Party.— Rules of Court.*—Although the points and authorities in appellant's brief are not applied to any specific ruling of the trial court relied on for reversal, yet where appellee has, by the statements in his brief, supplied the omissions of appellant, the questions sought to be presented may be considered without disregarding the rules for the preparation of briefs. p. 126.

2. DRAINS.—*Construction.—Objection to Contract.—Collusion and Fraud.—Legislative Power.*—It was the province of the legislature to designate who may institute and maintain the actions contemplated by the act of 1907 (Acts 1907 p. 490, §§3866-3877 Burns 1914), prohibiting fraud and collusion in the bidding for public work, and a taxpayer and property owner whose property is assessable for a drainage improvement is within the purview of the statute. p. 130.

3. DRAINS.—*Establishment.—Bidding for Contract.—Collusion or Fraud.—Remedies.—Statute.*—The purpose of the act of 1907 (Acts 1907 p. 490, §§3866-3877 Burns 1914), relating to combinations to restrain trade, is to prevent fraud and collusion in the bidding for contracts for public work, and to that end the legislature authorized not only that suits may be maintained by the proper persons to restrain violations of the act, but money paid under any contract procured in violation of the statute, before notice of fraud or collusion, may be recovered and that any person who has been injured by the doing of anything prohibited by the act may recover a penalty. p. 131.

4. DRAINS.—*Establishment.—Bidding for Contract.—Collusion or Fraud.—Statute.*—Under the act of 1907 (Acts 1907 p. 490, §§3866-3877 Burns 1914), directed to the prevention of fraud and collusion in the bidding for contracts for public work, if the successful bidder is a party directly or indirectly to collusion or fraud, no liability arises against the parties who would other-

wise be liable for the work contracted for, as a contract procured in violation of the act is void and unenforcible by the party who participated in the fraud or collusion by which the contract was procured, and anything remaining unperformed under the contract, or the awarding thereof, may be restrained if suit be instituted for that purpose by any of the persons designated by the statute, it being clear that the legislature intended to prevent a person who obtains a contract by fraud and collusion to derive any benefit therefrom directly or indirectly. p. 131.

5. INJUNCTION.—*Right to Relief.*—*Remedy at Law.*—Even in the absence of the statute giving the right to restrain the performance of a contract procured by collusion or fraud, the existence of a remedy at law would not necessarily deprive a party of injunctive relief, for, if the legal remedy is not as prompt, practical, efficient and adequate as that afforded by equity, an injunction will issue if the case is otherwise established. p. 132.

6. INJUNCTION.—*Grounds.*—*Multiplicity of Suits.*—Where there is a legal remedy, equity will frequently grant injunctive relief to prevent a multiplicity of suits. p. 132.

7. EQUITY.—*Jurisdiction.*—*Prevention of Fraud.*—Independent of statute, equity may be invoked to prevent fraud or to deprive a wrongdoer of the benefit of a fraudulent deal or transaction. p. 132.

8. DRAINS.—*Injunction.*—*Laches.*—*Public Interest.*—Where fraud and collusion have been employed to procure a contract for the construction of a public drain, the rule as to the effect of laches in dealings between individuals does not apply where public rights are involved. p. 132.

9. DRAINS.—*Establishment.*—*Injunction.*—*Laches.*—*Public Interest. Statute.*—In an action by the State, on the relation of a taxpayer, to annul the contract for the construction of a public drain, to enjoin the collection of assessments for the improvement and the payment of money by the drainage commissioner to the contractor, the remedy invoked under the statutes, §§3866-3877 Burns 1914, Acts 1907 p. 490, directed to the prevention of collusion and fraud in bidding for public contracts, was not intended to be limited to the private rights or interests of the taxpayer, but to reach all concerned in, or affected by, any particular contract or transaction tainted with fraud or collusion, and to secure or protect the interests of the public, so that those violating the statute cannot avoid the provisions thereof by showing that a party authorized to invoke the remedies afforded by such statute has not acted promptly. p. 133.

10. APPEAL.—*Petition for Rehearing.*—*Scope of Review.*—*Briefs.*— On a petition for a rehearing appellants may not present questions not presented by their original briefs. p. 134.

11.  DRAINS.—*Construction.*—*Contract.*—*Action to Annul.*—*Necessary Parties.*—In an action under the act of 1907, Acts 1907 p. 490, §§3866-3877 Burns 1914, by the State, on the relation of a taxpayer, to have a contract for the construction of a public drain declared void and to enjoin the parties to the contract from the performance thereof, the persons assessed for the improvement were not necessary party defendants, under §269 Burns 1914, §262 R. S. 1881, providing that any person may be made a defendant who has, or claims, any interest in the controversy adverse to the plaintiff, or who is a necessary party to the complete determination or settlement of the questions involved, since the persons so assessed were not parties to the contract, and could not have prevented the relator obtaining the relief sought, if he had brought himself within the provisions of the statute, and as they neither had nor claimed any interest adverse to the right asserted by the relator they were not necessary parties to the determination of the questions involved in the suit.  p. 135.

From Starke Circuit Court; *Harley A. Logan,* Special Judge.

Action by the State of Indiana, on the relation of Nathaniel Brown, against Miles Y. Royer and another. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John G. Reidelbach, Louis A. Reidelbach, John M. Spangler, William J. Reed* and *Henry A. Steis,* for appellants.

*Fansler & Foskett* and *Peters & Peters,* for appellee.

FELT, P. J.—This suit was brought by appellee against appellants to annul the contract for the construction of a public drain, to enjoin the collection of assessments for the improvement and the payment of money by the drainage commissioner to the contractor, appellant Royer. The complaint is in one paragraph and is based on the act of 1907. Acts 1907 p. 490, §§3866-3877 Burns 1914. It was answered by general denial and a plea of estoppel to which a reply in general denial was filed. On due request the court made a special finding of facts on which it stated its conclusions of law. The errors assigned and presented by the briefs call for a decision of the questions relating to the

right of the appellee to bring the suit and the correctness of the conclusions of law stated by the court on the finding of facts.

Appellees contend that no questions are presented by the briefs for the reason that the points and authorities are not applied to any specific ruling of the trial court relied

1. on for reversal. There is much merit in the criticism, but appellee has to some extent supplied the omissions of appellants by the statements in his brief, so that we may consider the questions above indicated without disregarding the rules for the preparation of briefs. *Geisendorff* v. *Cobbs* (1910), 47 Ind. App. 573, 577, 94 N. E. 236; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 626, 103 N. E. 652; *Schrader* v. *Meyer* (1911), 48 Ind. App. 36, 95 N. E. 335; *Inland Steel Co.* v. *Smith* (1906), 168 Ind. 245, 252, 80 N. E. 538.

The substance of the finding of facts so far as material to the questions presented is as follows: The relator, Nathaniel Brown, is a taxpayer of Van Buren township, Pulaski county, Indiana, and owns real estate abutting a public drain known as the "John F. Taylor ditch," which land is assessed for the construction of said ditch. Jerome B. Newman was, on October 6, 1910, duly appointed drainage commissioner or superintendent of construction of said ditch, which drain was duly established on October 6, 1910.

Said Newman duly qualified as such drainage commissioner and gave notice that he would receive bids for the construction of said ditch on November 5, 1910, and thereafter entered into a contract therefor with Miles Y. Royer for $6,490. Norman S. Denny, Edgar X. Boyles and said Royer each bid on said ditch. After making some bids Denny and Boyles retired and held a consultation, and Denny thereafter caused Royer to join them and thereupon Denny and Royer executed their note for $25 payable to Boyles and delivered it to him. That Denny had agreed with Boyles to give him the note in consideration of Boyles

refraining from bidding further on the ditch; that Royer had knowledge of the consideration for the note and of the aforesaid arrangement between Denny and Boyles; "that the defendant Miles Y. Royer, Norman S. Denny and Edward X. Boyles conducted themselves in the presence of the drainage commissioner as competitive bidders and that the agreements and understandings between them were collusive and fraudulent and made for the purpose and intention of limiting and restricting the bidding on the John F. Taylor ditch, a public work. That Edward X. Boyles and Norman S. Denny stopped bidding by reason of the above agreement and Miles Y. Royer was awarded the contract." That after the contract was let Denny claimed to be a partner with Royer and performed some labor on the ditch; that Denny's assessment on the ditch was $181 and Royer made a full settlement with him for that amount in which Denny agreed to and did pay Boyles $25 for said note; that the relator, Nathaniel Brown, was present when the contract was let to Royer on November 5, 1910, and on April 2, 1911, obtained knowledge of the facts relating to the letting of the contract in the manner aforesaid; that he consulted attorneys about the same in June, 1911, and began this suit on September 11, 1911; that he resided about a quarter of a mile from the ditch and when he commenced the suit he knew that 2,160 feet of twenty-four-inch tile and 3,800 feet of twenty-inch tile had been placed in the ditch, and also knew that within thirty to sixty days after the contract was let the commissioner purchased tile for the ditch at a cost of $3,500; that on April 2, 1911, the main line of the ditch was completed and about one-half of the cost of the whole ditch had then been expended; that Brown made no objection or complaint to Royer or said Newman until September, 1911; that the ditch was completed according to contract and specifications on April 2, 1912, and was accepted by the commissioner in charge of its construction; that Newman, the drainage commissioner,

unless restrained, will make payments on the contract for the construction of said ditch out of assessments made therefor against the real estate shown in the report on said ditch.

The conclusions of law on the finding of facts are as follows: "(1) The contract let by Jerome B. Newman, commissioner, to Miles Y. Royer is void as against the principal for which said commissioner was acting. (2) That the enforcement of said contract should be enjoined. (3) That the principal for which said commissioner was and is acting is not liable on said contract, and that Jerome B. Newman, commissioner, should be enjoined from making payments on said contract." The appellants each separately excepted to each conclusion of law.

The suit was brought under the statute. Acts 1907 p. 490, §§3866-3877 Burns 1914. The portions of the statute involved here provide as follows:

Section 3: "Any and all schemes, designs, understandings, plans, arrangments, contracts, agreements or combinations to limit, restrain, retard, impede or restrict bidding for the letting of any contract for * * * public work, directly or indirectly, or to in any manner combine or conspire to stifle or restrict free competition for the letting of any contract for * * * public work, are hereby declared illegal, and any person who shall directly or indirectly engage in any scheme, design, understanding, plan, arrangement, contract, agreement or combination to limit, restrain, retard, impede or restrict bidding for the letting of any contract for * * * public work, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined * * *."

Section 4: "If there shall be collusion or fraud of any kind or character among the bidders at the letting of any contract or work as provided in section three of this act, then the principal who lets the contract or work, or for whom the contract was let, shall not be liable for such letting or on account of such letting or on account of said

contract, or work, or any part thereof, to the successful bidder to whom the contract or work was let, * * * if such successful bidder be a party, directly or indirectly, to such collusion or fraud, on such contract, or letting, or for any work, materials furnished or thing done in discharge thereof, or with reference thereto, and if before notice of such collusion or fraud, payment or partial payment thereon or therefor shall have been made, such principal may at any time within five years from the date of the last payment made thereon or therefor, in an appropriate action in any court of competent jurisdiction in this state recover the full amount of such payment or payments with interest to date of judgment thereon, and attorneys fees, against such successful bidder, and such recovery shall not be a bar to any action, either civil or criminal, brought against such bidder on account of any violation of this act, on behalf of the state by the attorney-general, a prosecuting attorney or otherwise.

Section 5: "It shall be the duty of the attorney-general and of the prosecuting attorney of each judicial circuit to institute appropriate proceedings to prevent and restrain violations of the provisions of this act or any act of the common law relating to the subject-matter of this act. All such proceedings shall be in name of the state of Indiana upon relation of the proper party. The attorney-general may file such proceedings either in term time or in vacation, upon his own relation, or that of any private person, in any circuit or superior court of the state, without applying to such court for leave, when he shall deem it his duty so to do. Such proceedings shall be by information filed by any prosecuting attorney in a circuit or superior court of the proper county upon his own relation whenever he shall deem it his duty so to do, or shall be directed by the court or governor or attorney-general and an information may be filed by any taxpayer on his own relation."

Section 7: "Any person who shall be injured in his business or property by any person or corporation by reason of the doing by any person or persons, of anything forbidden or declared to be unlawful by this act, may sue therefor in the circuit or superior court of any county in which the defendant or defendants, or any of them, reside or are found without respect to the amount in controversy, and shall recover a penalty of threefold the damages which may be sustained, together with the costs of suit, including a reasonable attorney's fee."

Section 5 authorizes the suits contemplated by the act in question to be instituted by the Attorney-General on his own relation or that of a private person; by a prosecuting attorney on his own relation; or by any taxpayer on his own relation. In either case the act provides: "All such proceedings shall be in the name of the state of Indiana upon relation of the proper party" and the proper party must be held to be the Attorney-General, the prosecuting attorney, a private person or a taxpayer as designated in the statute. It was the province of the legislature to designate who may institute and maintain the actions contemplated by the act, and relator Nathaniel Brown as a taxpayer is within the purview of the statute. 32 Cyc 625, note 62; *Matter of Fenton* (1908), 58 Misc. Rep. (N. Y.) 303, 109 N. Y. Supp. 321; *State, ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 608, 609, 85 N. E. 513; *Baldwin* v. *Moroney* (1909), 173 Ind. 574, 577, 91 N. E. 3, 30 L. R. A. (N. S.) 761.

The exceptions to the conclusions of law stated on the finding of facts present more serious questions. Appellant contends that it is not shown that the relator will suffer great injury or that he does not have an adequate legal remedy; that the statute (§3872, *supra*) provides a complete and adequate remedy at law which the injured party is bound to pursue; that the relator is shown to have been guilty of such laches as will deprive him of injunctive re-

lief; that the facts do not warrant an injunction affecting the whole contract and the payment of all money due on the contract; that the conclusions of law which authorize a judgment affecting private persons not parties to the suit are erroneous and the judgment *coram non judice* and void.

Appellee contends that the facts bring the case within the provisions of the statute and warrant the relief granted; that the public has an interest in such proceedings; that the collusion shown by the facts is against public policy and an injury to the public on account thereof will be conclusively presumed.

Under the statute a party who has paid money under any contract procured in violation of the act "before notice of such collusion or fraud," may, within five years from the date of the last payment, recover the full amount so paid with interest. The statute likewise authorizes any person who has been injured by anything done in violation of the act to recover as a penalty threefold the damages sustained by him. But the statute also authorizes suits to restrain and prevent violations of the act or the common law relating to the subject-matter of the act. The purpose of the act was to prevent fraud and collusion ·in the letting of contracts and to protect trade and commerce against unlawful restraints and monopolies. To accomplish these ends the legislature has seen fit to incorporate into the statute different remedies and drastic measures for the punishment of those who violate its provisions, and for the relief of those who suffer on account thereof. If the successful bidder is a party directly or indirectly to such collusion or fraud, no liability arises against the parties who otherwise would be liable for the cost of the work covered by such contract. A contract procured in violation of this act is void and unenforcible by the party who participated in the fraud or collusion by which it was procured, and anything remaining undone which is about to be done or performed in pursuance or

furtherance of such letting or contract may be restrained and enjoined if suit for that purpose is duly brought by any of the persons designated in the statute. The legislature clearly intended to prevent a person who obtains a contract by fraud and collusion from deriving any benefit therefrom either directly or indirectly.

Even in the absence of the statute, the existence of a remedy at law does not necessarily deprive a person of injunctive relief. If the legal remedy is not as prompt, 5. practical, efficient and adequate as that afforded by equity, an injunction will issue if the case is otherwise established. *Shedd* v. *American Maize, etc., Co.* (1915), 60 Ind. App. 146, 108 N. E. 610, 622; *Cincinnati, etc., Railroad* v. *Wall* (1911), 48 Ind. App. 605, 609, 96 N. E. 389; *Indianapolis, etc., Traction Co.* v. *Essington* (1913), 54 Ind. App. 286, 289, 99 N. E. 757, 100 N. E. 765.

Where there is a legal remedy, equity will frequently grant injunctive relief to prevent multiplicity of suits. *Knickerbocker Ice Co.* v. *Surprise* (1912), 53 Ind. 6. App. 286, 291, 97 N. E. 357, 99 N. E. 58. The statute recognizes and is in harmony with these well-established rules of equity jurisprudence, and the provisions for legal remedies in certain contingencies do not mitigate against the provisions for injunctive relief when a case is otherwise made out entitling the complaining party to such relief.

We have held that the suit may be maintained by the State on the relation of a taxpayer. It is claimed that the delay in bringing the suit under the circumstances shown evidences such laches as to deprive the relator of equitable relief. As already shown, the statute is intended to prevent fraud and collusion. Independent of statute, 7. equity may be invoked to prevent fraud or to deprive a wrongdoer of the benefit of a fraudulent deal or transaction. The public has an interest in promoting honest dealing and in preventing fraud. This is 8.

peculiarly true of transactions where fraud and collusion have been employed to procure a contract for public work and the contract in this instance comes within that class. Whatever may be the effect of laches in dealings between individuals where the public is not concerned, the rule does not apply where public rights are involved. This general proposition is fortified in the case at bar by the provisions of the statute. 16 Cyc 81 *et seq.;* 22 Cyc 794; *Sweeny* v. *Williams* (1883), 36 N. J. Eq. 627, 629; *Teft* v. *Stewart* (1875), 31 Mich. 367, 371; *Allen* v. *Henn* (1902), 197 Ill. 487, 493, 64 N. E. 250; *Kissel* v. *Lewis* (1900), 156 Ind. 233, 241, 59 N. E. 478; *O'Brien* v. *Central Iron, etc., Co.* (1901), 158 Ind. 218, 221, 63 N. E. 302, 57 L. R. A. 508, 92 Am. St. 305; *Bissel Chilled Plow Works* v. *South Bend Mfg. Co.* —— Ind. App. ——, 111 N. E. 932; *Reyburn* v. *Sawyer* (1904), 135 N. C. 328, 47 S. E. 761, 65 L. R. A. 930, 935, 102 Am. St. 555.

The suit at bar is brought by the State of Indiana on the relation of a taxpayer in pursuance of the provisions of the statute, and the remedy invoked was not intended to be limited to the private rights or interests of such taxpayer, but to reach all concerned in, or affected by, any particular contract or transaction tainted with fraud or collusion, and to secure or protect the interests of the public. The remedy provided by the statute in a suit brought as in this case is identical with that available where the Attorney-General or prosecuting attorney proceeds in accordance with the provisions of the act.

The finding shows no wrong committed by the drainage commissioner, but the purpose of the statute is to prevent the party who procures a contract in violation of the statute from deriving any benefit therefrom either directly or indirectly. The provisions are broad enough to authorize an injunction to prevent the doing of anything which recognizes the validity of such contract. If the commissioner may step in and carry out the illegal contract, the purpose

of the law will be defeated. He may be enjoined, not because of any wrong of his own, but because his action may have the effect of defeating the clearly expressed intention of the legislature in enacting the statute.

Viewed from the standpoint of the relator's private interests alone, the law may seem to work a hardship on appellant Royer; but, viewed from the standpoint of honest dealing and the public good, the beneficial character of the statute is apparent. The question of the hardship that may result in this or any other case is not a question for the courts, for the legislature had the right to provide the remedies it deemed most expedient and best calculated to accomplish the end in view. The penalties and remedies provided do not affect those who have done no wrong. Those who violate the statute take their chances and cannot escape the consequences by showing that some one authorized to invoke its remedies has not acted promptly, and that the work has proceeded to a point where the remedy seems severe and drastic. Evidently it was the intention of the legislature to make the law so severe that men would be deterred from violating it.

We conclude therefore that the court did not err in its conclusions of law. The views already announced make it unnecessary to consider other questions presented in the briefs. No reversible error is shown. Judgment affirmed.

## On Petition for Rehearing.

Felt, J.—Appellants earnestly urge their petition for a rehearing, and by it seek to present some new questions not presented by their original briefs. It is well settled 10. that this cannot be done. *Chicago, etc., R. Co.* v. *Roth* (1915), 59 Ind. App. 161, 108 N. E. 971. Most of the questions discussed are decided by the original opinion, and after a careful review of such questions we find no reason to change or modify the conclusions already announced. In our view, appellants' contentions are fully

answered by the statute under which the suit was brought and by virtue of which the judgment rendered is fully authorized.

Appellants also insist that the court failed to decide the question of defect of parties defendant presented by appellants' demurrer to the complaint. The point was not decided because the court concluded that it was not duly presented by the briefs. We have re-examined the briefs and find that they do not strictly comply with the rules, but may be treated as showing a substantial compliance sufficient to justify us in considering the question. The demurrer alleges such defect by showing that other parties assessed for the construction of the ditch are not made defendants, and sets out their names. The suit was brought by the State of Indiana, on relation of Nathaniel Brown, a taxpayer, against Royer, who obtained the contract for construction of the ditch, and Newman, the drainage commissioner, who received the bids and entered into the contract with Royer for the construction of the public ditch. The suit was brought to declare the contract void and to enjoin the parties thereto from carrying it out. The parties to the contract were made defendants to the suit and the court granted the relief prayed as shown in the original opinion.

The statute authorized appellee as a taxpayer to maintain the suit. The persons assessed for the construction of the ditch were not parties to the contract and were not necessary parties to the suit to declare the contract void under the statute and to enjoin the parties thereto from carrying out its provisions. §269 Burns 1914, §268 R. S. 1881; *Town of Windfall City* v. *First Nat. Bank* (1909), 172 Ind. 679, 687, 87 N. E. 984, 89 N. E. 311; *Cummings* v. *Stark* (1894), 138 Ind. 94, 103, 34 N. E. 444; *Haggerty* v. *Wagner* (1897), 148 Ind. 625, 636-639, 48 N. E. 366, 39 L. R. A. 384.

The persons assessed were not parties to the contract and

could not have prevented appellee from obtaining the relief prayed for, if he brought himself within the provisions of the statute. They neither had nor claimed any interest adverse to the right asserted by appellee and were not necessary parties to a complete determination of the questions involved in the suit. The court, therefore, did not err in its ruling on the demurrer to the complaint.

The petition for a rehearing is overruled.

NOTE.—Reported in 112 N. E. 122, 113 N. E. 312. See under (5) 22 Cyc 771; (6) 122 Cyc 766. Injunction, right of taxpayer to relief by: (a) for misapplication of funds (3 Ann. Cas. 1014), in absence of statute, 36 L. R. A. (N. S.) 1; (b) in letting of contracts for public work, 17 Ann. Cas. 653 (where favoritism is shown, 36 L. R. A. [N. S.] 10); (c) to prevent enforcement of ordinance claimed to be void, 118 Am. St. 372. Laches in taxpayer's actions, effect, Ann. Cas. 1913C 898.