## EVANS ET AL. *v.* SHEPHARD.

### [No. 11,706. Filed February 21, 1924.]

1. PARTY WALLS.—*Openings in.*—*Trespass Through.*—*Theory of Complaint.*—Where the theory of a complaint was that the acts of the defendants in making openings in a party wall for doors and windows, the construction of cement walls on the land of the plaintiff to provide entrances into the basement of a building on the adjoining lot, and the erection of downspouts, window-sills and other accessories to such building which projected over plaintiff's lot, constituted a nuisance and continuing trespass, such theory was not changed by the additional averment that such continued trespass, if uninterrupted, would ripen into an easement. p. 148.

2. INJUNCTION.—*Trespass.*—*Continuing.*—An owner of land is entitled to injunctive relief if acts interfering with his use thereof constitute a continuing trespass. p. 153.

3. INJUNCTION.—*Mandatory.*—*To Prevent Ripening of Easement.*—A continuing trespass over the lands of another which, if uninterrupted, might ripen into an easement, will be enjoined, and, if necessary to restore the property to its original condition, a mandatory injunction will be granted to compel restoration. p. 153.

4. PRINCIPAL AND AGENT.—*Powers of Agent.*—*Grant of Easement.*—Where an agent's authority extended only to renting his principal's property, collecting rents and making repairs thereon, he could not grant permission to an adjoining owner to tear down a fire wall existing between the two properties, and erect in its place a wall with doors and windows in it, and construct various appurtenances over and upon the principal's land, constituting a continuing trespass, nor to grant an easement in his principal's realty. p. 153.

5. PRINCIPAL AND AGENT.—*Acts of Agent.*—*Ratification.*—Where a landowner agreed, through his agent, to sell a half interest in a fire wall to an adjoining owner, and the purchase price was paid to the vendor's agent, who knew the fact, but did not inform his principal thereof, that the purchaser had torn down the fire wall and erected a new wall in its place with openings therein, consisting of doors and windows, the former being continuously used by the vendee as a means of access to his building, the acceptance of the purchase money, with knowledge that it was to pay for one-half of the fire wall, while a ratification of the sale, was not, in the absence of knowledge, an acceptance of the new wall, with its objectionable appurtenances, in lieu of the fire wall. p. 153.

6. PARTY WALL.—*Change of Character.*—Where a half interest in a fire wall existing between adjoining properties was sold to the adjoining proprietor, the purchaser had no right to change its character without the consent of the owner of the other half. p. 156.

7. PARTY WALLS.—*Continuing Trespass.—Injunction.—Statute.* —Where the purchaser of a half interest in a fire wall on the line between two city lots, without the knowledge or consent of the owner of the other half, tore down said wall and constructed a new one with openings which projected over and into the adjoining lot, such purchaser and his tenants using the adjoining lot as a means of access to his own building, such acts constituted a nuisance which the adjoining owner was entitled to have enjoined, §§6179-6181 Burns 1914 not furnishing such owner an adequate remedy. p. 156.

From Vermillion Circuit Court; *O. B. Ratcliff*, Special Judge.

Action by Maggie Morgan Shephard against Clora Evans and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Beasley, Douthitt, Crawford & Beasley* and *Homer B. Aikman*, for appellants.

*George D. Sunkel*, for appellee.

NICHOLS, J.—This was an action by appellee for a mandatory injunction against appellants to require the removal of certain alleged obstructions extending beyond the wall of a certain building adjoining appellee's lands, the closing of certain windows, doors and openings in such wall, and the removal of certain permanent structures and obstructions extending from said appellants' building onto the lands of appellee.

The theory of the complaint is that the use of such windows, doors and openings for ingress and egress to and from the appellants' building upon and over the lands of the appellee, and the maintaining of such obstructions upon and adjoining said wall of appellants' building constitutes a nuisance and a continuing trespass upon the appellee's lands and pre-

vents her free use of the same. That it is averred that such continued trespass, if uninterrupted, would ripen into an easement, does not in our opinion change the theory of the complaint.

Appellants filed answer in five paragraphs, the first in general denial; the second alleging the construction of the wall involved, pursuant to the terms of a parol license, and that appellee had full notice and knowledge of the construction thereof as it was being built, stood by and without objection, saw that appellants were expending large sums of money, and made no objections until long after the wall and building were completed; the third, the same facts practically as the second paragraph, with the additional averments that the open space on the west end of appellee's lot was an open space used by the public generally for parking autos and other vehicles, and that the use of such open space by appellants was not different from that of the public generally; the fourth avers facts practically the same as the third paragraph and, in addition thereto, that the parol license was granted by appellee's agent; the fifth, that the appellants constructed the wall in question under the terms of a written contract authorizing the construction thereof.

The cause was tried by the court, and the court rendered its finding in favor of appellee and rendered judgment in her favor that appellants and each of them be required and compelled to close all of the doors, windows and transoms constructed by them in the north wall of their said building, and to restore said wall to a solid wall, by filling up such openings with brick and mortar in a good and workmanlike manner so that the same will conform and correspond to the adjoining part of said wall; to remove that part of the stone windowsills which project north and beyond the line of said wall, to fill up two excavations dug by them on the

premises of appellee and used by them in connection with the basement of their building; to remove the water drain and downspout attached to their building and projecting beyond the north line of said wall, all on or before July 1, 1923, and that they be thereafter perpetually enjoined from maintaining such trespasses.

The errors relied upon for reversal are the action of the court in overruling appellants' motion for a new trial, and in overruling appellants' motion to modify judgment.

The motion for a new trial presents that the decision of the court is not sustained by sufficient evidence, and that it is contrary to law.

The facts, as disclosed by the evidence, are that appellee's predecessor in title several years ago built a fire-wall about fifteen feet high and thirteen inches thick, on the south side of his lot in Clinton, Indiana, for protection against a frame livery barn on the adjoining lot on the south. Appellee inherited from her predecessor, who was her brother, the south twenty-six feet of this lot, together with the fire-wall thereon, about the year 1918. The fire-wall and livery barn remained intact until the spring of 1919, when the appellants became the owners of said livery barn and the west fifty-eight feet of the lot upon which it was located. Soon thereafter, the livery barn was condemned by the Fire Marshal and was torn down. Thereafter appellants decided to erect a new building on the west fifty-eight feet of such lot adjoining the south side of said fire-wall, and to use said fire-wall in the new building. Pursuant thereto, appellant Evan A. Evans saw one Waggoner, the manager of Morgan's Emporium store, which was situated on a part of the lot on which said fire-wall stood, and in which store the appellee had an interest, with a view to purchasing an interest in said fire-wall. Waggoner informed such appellant that the

appellants could purchase one-half interest in such fire-wall by paying therefor $173.67, one-half of the cost of the same.   This proposition was accepted by the appellants, and without payment of the money at such time, they did, on May 30, 1919, proceed to tear down said wall and reconstruct it in the construction of their new building, without molestation or interference from the appellee.   The new wall was built where the old one stood, on the lands of the appellee, and was made the back, or north wall of the appellants' building.   In reconstructing the wall as the back wall of the Evans' Building, certain openings were left in the wall, including three doors with transoms and several windows, as alleged in the complaint; that the windows had projecting stone sills and caps reaching out over appellee's premises.   Certain excavations had been made in appellee's land, adjoining said wall, for openings into the basement of the appellants' building, extending several feet into appellee's land, and cement walls were constructed around them, which were of a permanent nature.   There had been originally two of these, but one had later been filled up.   Drains and a downspout had been attached to this wall over appellee's premises.   In using the doors of said building, appellants' tenants and others used the lands of appellee to get in and out of said Evans' Building, and there was no way to enter or leave the said building and use said doors without using appellee's lands.   Appellants used appellee's lands for the purpose of removing ashes from the basement of their building.   The wall had not been reconstructed as a fire wall, but as a wall with openings, and used entirely by appellants.   Said projections, downspout and gutter, excavations, and cement structures, were on appellee's premises, and had been placed there by appellants.   Said doors, windows and openings were placed in said wall by appellants, and all said openings,

and structures were being used by appellants, and continued to be used by them, and, in so doing, they were using appellee's premises. As the work on the new building progressed, appellant Evans claims that he saw Waggoner and reached an agreement with him about inserting openings, with the necessary projections incidental thereto, about which appellee complains in her complaint. Waggoner denies that the appellant ever said anything to him about erecting a new wall before it was done, but admits that he saw such wall in course of construction and made no objection. Appellee says that she did not give the appellants any authority to make such openings or to tear down or rebuild such wall, either in person or by agent, that said Waggoner was not her agent for any such purpose, and never had been. She says that she did not know appellants, and had never talked to them. Appellants admit that appellee gave them no such authority in person. After the building was completed, appellants paid the money amounting to $173.67 to said Waggoner for a half interest in the fire wall, and Waggoner paid the same to appellee. But Waggoner did not inform appellee of the openings in said wall, or the projections incidental thereto, or of the fact that her premises were being used by appellants for ingress and egress to and from their building, or of the other things complained of by appellee. Appellee testified that she knew nothing of these matters at such time, and did not know such facts until some time thereafter. She had been absent from the store since her brother's death, between two and three years before, and upon her first visit to the store, she discovered the men going back and forth across her lot in the rear of the store, and through the doors in the new wall, and later observed the condition of the new wall and the absence of the fire wall. She had never been down to her property while the new build-

ing was under construction, and had no knowledge of the conditions there, or what had been done to her firewall, until she discovered them as aforesaid. There is nothing to contradict her testimony on this point, except that she lived in Clinton. She testified that as soon as she found out the condition of the wall and saw appellants using her premises, she went immediately to appellants and tried to get the matter adjusted, and, when she failed, she employed a lawyer and filed this suit.

If the acts of appellants as above set out constitute a continuous trespass upon appellee's rights, it is well settled that she is entitled to injunctive relief. *Wirrick* v. *Boyles* (1910), 45 Ind. App. 698, 91 N. E. 621; *Knickerbocker Ice Co.* v. *Surprise* (1912), 53 Ind. App. 286, 97 N. E. 357, 99 N. E. 58; *Brenner* v. *Heiler* (1910), 46 Ind. App. 335, 91 N. E. 744; *Owens* v. *Lewis* (1874), 46 Ind. 488, 15 Am. Rep. 295. And if there is an attempted appropriation of property which, in time, might ripen into an easement, equity will compel restoration. *Szathmary* v. *Boston & Albany Railroad* (1912), 214 Mass. 42, 100 N. E. 1107.

But appellants contend that they constructed the wall involved, with its openings, and did the other acts of which appellee complains, with the permission of appellee. They do not claim that there was any permission granted to them by appellee directly, but that such permission was by appellee's agent. But it clearly appears by the evidence that such agent's authority extended only to renting appellee's properties, collecting the rents, and making repairs thereon. It nowhere appears that he had authority to convey such property or to grant easements thereon. There is no evidence of any instrument in writing granting him such powers, nor is there any evidence of any other transaction in

which he presumed to exercise such authority. He makes no claim of such right in this case, and appellee says that he had no such authority. It is true that the agent accepted $173.67 for one-half of the old fire-wall, and appellant Evan A. Evans says that what he purchased was one-half of the old fire-wall. When the agent turned this money over to appellee, he told her that it was to pay for one-half of the fire-wall, and, at that time, he did not tell her that the old wall had been torn down, and the new one with windows and doors and other appurtenances had been constructed in its place, nor did she have such knowledge until some time afterward when she immediately took steps to protect her rights. Her prompt action upon learning of conditions makes it unnecessary to discuss the question of laches presented by appellants. Her acceptance of the $173.67 with knowledge that it was to pay for one-half of the fire-wall was a ratification of such sale, but certainly was not, in the absence of knowledge, an acceptance of the new wall with its objectionable appurtenances in lieu of the old fire-wall. That an agent with authority such as mentioned above, has no authority such as appellant contends belonged to appellee's agent is thus expressed in 2 C. J. 644: "However broad the terms of his (the agent's) authority, he can not bind his principal by the performance of any act beyond the ordinary needs of his principal's business, or in other words, beyond the apparent and ostensible scope of his authority. Thus an agent to manage a business or property can not sell or dispose of it, make permanent improvements, additions, or alterations, or grant any easements or licenses or impose other burdens upon his principal's property." With other cases, *Lawrence* v. *Springer* (1892), 49 N. J. Eq. 289, 24 Atl. 933, 31 Am. St. 702, is cited which forcefully sustains the principle. Indiana authorities to the same effect

are: *Metzger* v. *Huntington, Trustee* (1894), 139 Ind. 501; *Davis* v. *Talbott, Rec.* (1894), 137 Ind. 235; *Robinson* v. *Anderson* (1886), 106 Ind. 152; *Crumpacker* v. *Jeffrey* (1917), 63 Ind. App. 632, 115 N. E. 62; *Pettis* v. *Johnson* (1877), 56 Ind. 139.

In the Metzger case, the court on page 515, quoting from Mechem on Agency, §706, says: "Every person dealing with an assumed agent is bound, at his peril, to ascertain the nature and extent of the agent's authority. The very fact that the agent assumes to exercise a delegated power, is sufficient to put the person dealing with him upon his guard, to satisfy himself that the agent really possesses the pretended power. If, having relied upon it, he seeks to hold the alleged principal responsible, he must be prepared to prove, if either be denied, not only that the agency existed, but that the agent had the authority which he exercised." We are clear that any acts of appellee's agent as claimed by appellants did not bind appellee, that any acquiescence by the agent in appellants' construction of the new wall in the manner described did not work an estoppel as against appellee, and that by the acceptance of the check for $173.67, she did not ratify any acts or acquiescence of her agent as to the manner of the construction of the new wall, and that such acceptance of the check, without knowledge of the new wall or the manner of its construction, did not constitute an acceptance of such new wall. The fire-wall involved was a solid wall and when appellants purchased one-half of it as it stood upon appellee's ground, it became a party wall, and as such, in the absence of evidence to the contrary, a solid wall, and appellee had a right to require that it or the new wall erected in its stead remain such. *Fidelity Lodge, etc.*, v. *Bond* (1896), 147 Ind. 437, 442; *Kiefer* v. *Dickson* (1908), 41 Ind. App. 543, 84 N. E. 523; *Finch* v. *Theiss* (1915), 267 Ill. 65, 107 N. E. 898;

*Springer* v. *Darlington* (1904), 207 Ill. 238, 69 N. E. 946; 30 Cyc 785.

Appellants say that under §§6179-6181 Burns 1914, §§4322-4324 R. S. 1881, appellee had a remedy at law, citing *Hart* v. *Hildebrandt* (1903), 30 Ind. App. 415, 66 N. E. 173, to sustain their contention, but such sections and authority can have no application to the facts here involved. There is more than an easement here; there is the question of the proper construction of a party wall and such a continuing trespass of appellee's rights as to constitute a nuisance. Appellants could have no more right to place doors and windows in the new wall, than they had to cut such openings in the old fire-wall, and it will hardly be claimed that they could have lawfully committed such an invasion of appellee's rights. By the doors, three in number, left in the new wall, appellants, their tenants and many other persons were passing daily over appellee's lands without her consent. Excavations for the cellar windows, walled with cement, were made into appellee's land three feet from the wall. These trespasses with others were averred to constitute private nuisances to appellee, and the court, by its general finding, so found.

No question other than the ones above discussed is presented by appellants' motion to modify the judgment, and no authority other than *Hart* v. *Hildebrandt, supra,* is cited to sustain appellants' contentions with reference thereto. Appellants fail to comprehend the office of a motion to modify. The motion was properly overruled.

We find no reversible error. Judgment affirmed.