HARRIS *v.* KREKLER.

[No. 16,870. Filed February 2, 1943. Rehearing denied March 15, 1943. Transfer denied April 1, 1943.]

*C. C. Hendren,* of Bloomfield, *E. J. Dudley,* of Newport, and *John R. Ax,* of Huntingburg, for appellant.

*Aikman, Miller & Causey,* of Terre Haute, and *Harold H. Wisehart,* of Clinton, for appellee.

CRUMPACKER, J.—In our consideration of this case, we are met at the very outset with a disagreement of counsel as to its nature and theory, and the situation presented by this appeal is somewhat unusual in that there can be little or no disagreement as to the law applicable when once the prevailing theory is determined.

Appellee's complaint alleges in substance that she is the owner and entitled to the immediate possession of certain lands in Vermillion County. That on or about the 2nd day of March, 1939, the appellant wrongfully entered upon said real estate with men, trucks and steam shovels, removed the surface soil therefrom and hauled away the underlying coal and that the appellant

threatens to, and will, unless restrained by the court, continue in such unlawful conduct to the permanent and irreparable injury of appellee's lands. That she has no adequate remedy at law and therefore prays that a restraining order be issued and, upon final hearing of the cause, the appellant be permanently enjoined from further trespass.

To this complaint the appellant filed an answer in four paragraphs. The first was a general denial. The second alleges that he took possession of the property in controversy under terms of a lease executed by the appellee and himself on the 20th day of December, 1927. That, as provided by said lease, he is authorized and obligated to operate a strip coal mine on the leased premises and to pay to the appellee as rental therefor a stipulated sum for each ton of coal mined, with a minimum payment of $50.00 per month. That, in preparation for such operation, he invested large sums of money in the construction of tipples, buildings, tracks, and the purchase and installation of machinery. That, after the actual mining of coal began and before he had in any manner defaulted in payment of rent or royalties, the terms of said lease were modified by oral agreement between the parties whereby the minimum rental of $50.00 per month was eliminated and the rent determined solely by royalties based on the actual tonnage of coal mined and sold. That thereafter he continued to operate said mine in all respects in conformity with the terms of said lease, as modified, until he was notified by the appellee to cease. That pursuant to said notice he quit operations for a long period of time but finally resumed same upon advice of counsel and continued so to do until enjoined by the Vermillion Circuit Court.

The third and fourth paragraphs of appellant's

answer are similar in purport except that the modification agreement is alleged to have been made with appellee through an agent, as set out in the third paragraph, and partly in person and partly through agent, as alleged in the fourth paragraph.

The appellee replied to the second, third and fourth paragraphs of answer by admitting the execution of the lease, the service of a termination notice, and the stoppage of work, but denying all other material allegations thereof.

Upon the issues thus joined there was a trial by the court without the intervention of a jury, a finding for the appellee and judgment enjoining the appellant from further operation of the leased property. From this judgment the appellant appeals and assigns as sole error the overruling of his motion for a new trial.

It is appellant's contention that the pleadings as a whole, and the theory upon which the case was tried, characterize the action as an attempt by appellee to forfeit a lease for the nonpayment of money, by invoking equity and asking injunctive relief. This, he insists, cannot be done in the instant case for many reasons ably urged in his brief, and to which we readily agree *if* it is to be conceded that a privity of interest, created by the lease, still existed between the parties at the time the appellee sought injunctive relief.

In support of this view of the theory of the case, our attention is directed to *Burnett Coal Mining Co.* v. *Schrepferman* (1921), 77 Ind. App. 45, 55, 133 N. E. 34, in which the court said:

> "The complaint in effect avers an unlawful entry and detainer, but the second paragraph of answer under consideration, the averments of which must be taken as true in considering the demurrer thereto, show that plaintiff in reality seeks a forfeiture

which it undertakes to consummate by seeking injunctive relief."

It should be borne in mind that the court, in making the above declaration, was considering the sufficiency of an answer pleading the existence of a lease between the parties at the time of the alleged unlawful entry and detainer and was bound to assume that such was the fact. Although appellee's reply to a similar answer in the instant case admits the execution of a lease between the parties and the service of a notice of forfeiture, it denies all other material allegations therein contained and thus puts in factual issue the existence of such lease, as a controlling document, at the time of the alleged trespass.

It is appellee's contention that the action is nothing more than what it appears to be on the face of the complaint—a simple suit to enjoin a continuing trespass which tends to destroy the substance of her estate in the lands involved—and that any rights the appellant may have had under the lease pleaded in his answer, had long since been mutually abandoned when, in March, 1939, he re-entered appellee's property and resumed mining operations thereon. This, the appellee urges, is a situation for which equity is prompt to grant relief.

Whether or not the trial court erred in overruling appellant's motion for a new trial depends wholly upon which of such theories is applicable to the facts as found. If the lease in controversy was in force and effect at the time appellant re-entered appellee's lands, injunction would not lie to effect a forfeiture thereof. On the other hand, if the appellant had abandoned all rights under said lease at the time of such re-entry and such abandonment had been concurred in by the appellee, then appellant's acts and

threatened acts in connection with appellee's land can be enjoined as a continuing trespass. What the situation was in that respect is a question of fact exclusively within the province of the trial court. There was a general finding for the appellee on her complaint, and it is to be presumed that the trial court found that at the time of the trespass there was no privity of interest between the parties still in effect under the terms of the lease, and that such trespass was continuing in its nature.

The appellant still insists, however, that even on this theory of the case appellee must fail because (1) ejectment and damages furnish an adequate remedy at law, (2) the mere claim of irreparable injury will not suffice to warrant injunctive relief, but the facts must appear on which such claim is predicated in order that the court may be satisfied as to the nature of the injury, (3) appellant's alleged trespass consisted of nothing more than a use of the property in the manner in which it was intended to be used and for which it is particularly adapted. That under such circumstances there can be no irreparable injury but, at best, a mere diminution in the value of the land involved, for which equity affords no relief, and (4) the granting of an injunction will necessarily cause a loss to the appellant grossly disproportionate to the injuries to be suffered by the appellee in the event such relief is denied. Each of these propositions, the appellant argues, is supported by the uncontradicted evidence in the case and are therefore controlling, even though the trial court found the acts complained of are a trespass and that this action is not an effort to forfeit a lease through injunction. To this we cannot agree.

In the early history of equity jurisprudence courts of chancery uniformly refused to restrain trespass of

any character, but in recent years the courts have repeatedly broken through this rule and now it can be said that cases in which equity will restrain trespass to realty are grouped as follows: (1) When the legal remedy is inadequate because the injury is irreparable in its nature; (2) when the trespass is continuous or repeated wrongful acts are done or threatened; and (3) when the legal remedy is inadequate because the trespasser is insolvent. Pomeroy's Equity Jurisprudence (2d) Vol. 5, § 1909, p. 4326.

From an examination of appellee's complaint it is clear that she has attempted to bring herself within the second classification above enumerated. She specifically alleges that on March 2, 1939, the defendant wrongfully entered her land with men, trucks and steam shovels, removed the surface soil therefrom and hauled away the underlying coal. That the appellant is *still* so doing and will *continue* to so do unless restrained. If a wrongdoer manifests a purpose to persist in perpetrating his unlawful acts, the vexation, expense and trouble of prosecution of appropriate actions at law, make such legal remedy inadequate, and justifies one injured thereby in coming into equity for injunctive relief. *Evans* v. *Shephard* (1924), 81 Ind. App. 147, 142 N. E. 730; *Cox* v. *Louisville, etc., R. R. Co.* (1874), 48 Ind. 178; *Lake Erie & Western Railroad Company* v. *Young* (1893), 135 Ind. 426, 35 N. E. 177; *Wirrick* v. *Boyles* (1910), 45 Ind. App. 698, 91 N. E. 621; *Fisher* v. *Carey* (1918), 67 Ind. App. 438, 119 N. E. 376.

It is thus apparent that the trial court, having found as a matter of fact that no privity of interest existed between the parties in the land involved and that the acts complained of constituted a continuing trespass thereon, committed no error in

granting injunctive relief, and the judgment of the trial court must stand unless wholly unsupported by any substantial evidence or reasonable inferences to be drawn therefrom.

With this in mind, we have carefully examined the transcript of all evidence before the trial court and conclude that, although there is serious conflict, there is competent and substantial evidence to support the ultimate facts as found and the judgment rendered thereon.

Judgment is accordingly affirmed.

NOTE.—Reported in 46 N. E. (2d) 267.