SCHMIDT ENTERPRISES, INC. AND ROBERT H. SCHMIDT
*v.* STATE OF INDIANA.

[No. 2-374A60. Filed September 15, 1976.]

*James L. Brand, John R. Van Winkle,* of Greenfield, for appellants.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

## CASE SUMMARY

LOWDERMILK, J.—This appeal was transferred to this office from the Second District in order to lessen the disparity in caseloads between the Districts.

Defendants-appellants Schmidt Enterprises, Inc., and Robert H. Schmidt[1] appeal from an injunction entered against them pursuant to Indiana's statute proscribing deceptive consumer sales,[2] which plaintiff-appellee State of Indiana sought to enforce in this action.

We affirm in part and reverse in part.

## FACTS

The facts most favorable to the State reveal that Mrs. Frank Monahan, on March 26, 1972, called Hoosier Chimney Service, which is owned by Schmidt Enterprises, Inc., seeking repair of her chimney. That day representatives of the company fixed the chimney and told Mrs. Monahan that her chimney needed re-lining and that the cost of this service would be $1,407. One of the representatives took Mrs. Monahan

---

1. Defendant Thomas J. Schmidt did not appeal the trial court's decree.
2. IC 1971, 24-5-0.5-1, *et seq.* (Burns Code Ed.).

to the bank where she transferred money to her checking account, out of which she paid for the re-lining of the chimney.

On the next day Thomas Schmidt and another man came to Mrs. Monahan's desiring to check the furnace in the other half of Mrs. Monahan's double. After inspecting the furnace, they told Mrs. Monahan that the furnace was 15 years old and was defective so that a new furnace was needed.

Mrs. Monahan's house was later visited by a heating expert at the request of the Metropolitan Division of Buildings. His inspection found no defect in the operation of the furnace, which was in fact only 6 years old. He also felt that Mrs. Monahan did not need a chimney liner.

Robert Schmidt signed the application for the building permit authorizing the work on Mrs. Monahan's chimney.

Mrs. Ora Stutsman on October 26, 1971, called the American Maintenance Company, also owned by Schmidt Enterprises, Inc., to have a leak in her living room chimney repaired. Thomas Schmidt was one of those who came in response to her call. Mrs. Stutsman showed them the leak in that chimney but was asked where her furnace was and directed the men to the basement. After inspecting the furnace Thomas Schmidt remarked to Mrs. Stutsman, "My God, it's a wonder you're alive" and "It's a wonder the house hasn't blown up." He stated that fumes were coming back into the house, and that a new liner was needed in her other chimney. The cost of repair was estimated at $713.00.

The same day the repairmen brought materials and worked for about one-half hour on the chimney about which Mrs. Stutsman did not complain. No repairs were made on the chimney about which she called.

An investigator for the city later examined the chimney on which appellants worked and found no signs of a liner having been installed therein.

Mrs. Virgie Mitchell operated a licensed home for child care in her residence. She was told by an employee of the gas utility that she needed her chimney cleaned. Responding to her call, representatives of Hoosier Chimney Service on April 26, 1973, came to her home and advised her that her chimney could not be cleaned without damaging their machine. The next day the men returned with Thomas Schmidt, who, upon inspecting the furnace, advised her that the chimney needed re-lining. Mrs. Mitchell also decided at this time to install central air conditioning.

The air conditioner after installation did not work correctly. The air did not duct properly and the system leaked water. Robert Schmidt came to make some adjustments, but problems remained.

The chimney did not draw properly so that Mrs. Mitchell could not burn trash in her incinerator without smoke blowing into the living room. Neither the chiminey nor the air conditioner had passed the inspection at the time of trial.

An agreement was reached between Mrs. Mitchell and Robert Schmidt that she pay $1,361 instead of the $2,100 called for in the original contract. According to Mrs. Mitchell, Robert Schmidt agreed to the lower price because he needed the money.

An inspector for the superintendent of city contractors inspected Mrs. Mitchell's home. He found that the chimney for the three appliances had been recently capped. After removing the cap he found a galvanized pipe which extended down into the chimney for five to six feet, which was not in his opinion a chimney liner and would not support the heat of the furnace, hot water heater and incinerator. Another investigator, from the division of buildings, found no evidence of a continuous liner, but stated that there appeared to be something extending down into the chimney, which was two to four feet in length.

Robert and Thomas Schmidt were the stockholders of Schmidt Enterprises, Inc., with Robert serving as president.

After a trial to the court, the trial court entered the following judgment:

"The Court now finds that the Defendants are in violation of Indiana Burns Statute § 19-15-103 (a) (5) (1972 Supplement) which reads as follows:

'19-15-103- IC 24-5-0.5-3-. Deceptive acts.— (a) The act of a supplier in representing, orally or in writing, as to the subject of a consumer transaction furnished by such supplier, any of the following is a deceptive act:

(5) that replacement or repair constituting the subject of a consumer transaction is needed, if it is not, and if the supplier knows or should reasonably know that it is not.'

The Defendants are restrained and enjoined from practicing deceptive acts pursuant to the authority of Burns Statute § 19-15-101 *et seq.* (1972 Supplement) IC 1971, 24-5-0.5 [-] 1 *et seq.*

THE COURT NOW ORDERS that all contract entered into by and between consumers and Defendants which resulted from the commission of deceptive acts by the Defendants are void and that upon such Order Defendants shall promptly refund all monies paid to Defendants, Defendants' agents, employees and/or other representatives by said consumers.

Costs versus the Defendants."

## ISSUES

1. Whether the trial court's judgment was too uncertain, vague, and indefinite.

2. Whether the trial court's judgment was contrary to law.

3. Whether the trial court's judgment was supported by sufficient evidence.

## DECISION

ISSUE ONE:

Appellants first argue that the trial court's judgment is defective in that it does not identify what acts are enjoined.

They rely on *Martinal* v. *Lake O'The Woods* (1967), 248 Ind. 252, 225 N.E.2d 183 where a contempt judgment was held in

error because it was based on a defective judgment. Of the defective original judgment, it was stated, at 248 Ind. 253:

". . . It is too vague and uncertain. To grant an injunction 'as prayed for in Paragraph One of plaintiff's complaint,' is not sufficiently definite and certain to bind a party upon whom it is served."

Our Supreme Court then declared that orders of a court must make clear and certain which acts are enjoined.

The trial court's judgment first recited the statute defining "deceptive act" as representing to a consumer that repair or replacement is needed when it is not necessary and the declarant knows it is not. The trial court's judgment immediately thereafter enjoined "deceptive acts." We therefore conclude that the trial court's judgment made the forbidden conduct clear and certain.

Appellants also claim that the trial court's judgment amounted to a sweeping order commanding appellants to observe their contracts—such as the decree deemed too broad and indefinite in *Barth* v. *Pittsburgh, C.C. & St. L. Ry. Co.* (1911), 175 Ind. 554, 93 N.E. 535.

However, the trial court's decree voided appellant's contracts and did not command compliance therewith. The decree enjoined conduct which necessarily precedes the formation of a contract.

Appellants secondly argue that the trial court's judgment was too uncertain and indefinite in that it failed to specify which contracts it voided.

This court has a duty in construing the trial court's decree to give it, if possible, a construction which sustains its validity. *Local Union No. 135 et al.* v. *Merchandise Warehouse Co.* (1959), 240 Ind. 153, 159 N.E.2d 388. And this court may look to the whole record to ascertain the meaning and effect of the trial court's judgment. *State ex rel. Booth* v. *Beck Jewelry Enterprises* (1942), 220 Ind. 276, 41 N.E.2d 622, 141 A.L.R. 876.

We therefore conclude that the trial court's decree voided appellants' contracts with Mrs. Monahan, Mrs. Stutsman, and Mrs. Mitchell inasmuch as those were the only contracts shown by the State.

Appellants further contend that the trial court's decree ordering refunds of the payments received under the voided contracts was defective in that it did not specify to whom the refunds were to be made.

Inasmuch as the record revealed payments to appellants made by Mrs. Monahan, Mrs. Stutsman, and Mrs. Mitchell, we conclude that the refunds ordered by the trial court were to be made to these three consumers.

Appellants lastly raise the lack of specified amounts of refunds in the trial court's decree as a defect.

They rely on *First National Bank of Martinsville* v. *Crone* (1973), 157 Ind. App. 665, 301 N.E.2d 378, in which this court held a judgment defective where it did not specify how much money would have to be paid to a prevailing litigant. See also *Kist* v. *Coughlin* (1944), 222 Ind. 639, 57 N.E.2d 199.

The record clearly showed that Mrs. Monahan paid, and appellants received, $1,407 for the installation of the chimney liner at her home. And the record disclosed that for the chimney work done at Mrs. Stutsman's abode, appellants received $713.00 from Mrs. Stutsman.

However, neither the trial court's decree nor the record revealed the exact amount of refund which Mrs. Mitchell should receive. There was no indication as to how much, if any, of the funds she paid to appellants were attributable to the repair work procured through deceptive acts and how much, if any, were attributable to the installation of the air conditioner which Mrs. Mitchell voluntarily requested.

We conclude that the decree was erroneous in failing to specify the amount of refund to each consumer who testified herein.

However, the decree may easily be corrected to specify the amounts of refunds to Mrs. Monahan and Mrs. Stutsman inasmuch as the record was unequivocal as to the amounts of the refunds to which they were entitled. Therefore, we hold that the defect in the trial court's judgment is not reversible error as to the refunds to Mrs. Monahan and Mrs. Stutsman.

Appellants also complain of the failure of the trial court to make findings of fact,[3] but cite no authority to support this assertion of error and thereby waive it under Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). This court cannot answer such "bald assertions of error." *Williams* v. *State* (1973), 260 Ind. 543, 547, 297 N.E.2d 805.

ISSUE TWO:

Appellants make two arguments why the trial court's judgment was contrary to law. They first raise the statute[4] enforced by the State and maintain that it does not authorize the Attorney General of Indiana to procure refunds for victims of deceptive acts.

They also contends that the trial court's decree deprived them of due process of law in that it purported to void contracts with and to grant refunds to consumers who did not present evidence against appellants, against whom appellants had no opportunity to present evidence, and who were not subject to cross-examination by appellants.

---

3. See Ind. Rules of Procedure, Trial Rules 65(b) and 52(A), which provides:

"The court shall make special findings of fact without request (1) in granting . . . preliminary injunctions . . ."

4. IC 1971, 24-5-0.5-4 (Burns Code Ed.) provides:

"(a) A person relying upon an uncured or incurable deceptive act may bring an action for the damages he has actually suffered as a consumer as a result of such deceptive act. The court may award reasonable attorney fees to the party that prevails in an action under this subsection (a).

\* \* \*

(c) The attorney-general of the state of Indiana may bring an action to enjoin a deceptive act.

(d) In an action under subsections (a), (b) or (c) of this section, the court may void or limit the application of contracts or clauses resulting from deceptive acts. . . ."

We find this contention untenable for the reason that the trial court's decree ordered refunds only to the three consumers—Mrs. Monahan, Mrs. Stutsman, and Mrs. ■ Mitchell—who complained of deceptive acts and who testified and were cross-examined by appellants in this cause.

Further, appellants failed to bring these arguments to the trial court's attention in their motion to correct errors and therefore did not preserve these questions for appeal. ■ Ind. Rules of Procedure, Trial Rule 59 (G) ; *Haskett* v. *Haskett* (1975), 164 Ind. App. 105, 327 N.E.2d 612.

ISSUE THREE:

Appellant Schmidt Enterprises, Inc., contends that the injunction was based upon insufficient evidence in that the State only produced evidence of completed transactions.

■ We may disturb the trial court's order only if we find it to be clearly erroneous. Ind. Rules of Procedure, Appellate Rule 15 (N).

It is the general rule that equity may enjoin continuing wrongful activity *Lynch* v. *Keck* (1970), 147 Ind. App. 570, 263 N.E.2d 176. In *Harris* v. *Krekler* (1943), 113 ■ Ind. App. 190, 196, 46 N.E.2d 267, this court **stated:**

". . . If a wrongdoer manifests a purpose to persist in perpetrating his unlawful acts, the vexation, expense and trouble of prosecution of appropriate actions at law, make such legal remedy inadequate, and justifies one injured thereby in coming into equity for injunctive relief."

Such an injunction also is proper in that it prevents a multiplicity of litigation. *Lynch* v. *Keck, supra;* 16 I.L.E., *Injunction* § 17 (1959).

Inasmuch as the State's proof showed the persistence of appellant Schmidt Enterprises, Inc. in engaging in deceptive acts, we conclude that the injunction was not in error.

Appellant Robert Schmidt argues that the injunction, as it affects him, is based on insufficient evidence in that the State did not show that he represented to anyone that repairs were necessary when they were not and he knew they were not.

The act enforced in this case "shall be liberally construed and applied to promote its purposes and policies" which include protecting consumers from those who commit deceptive sales acts and encouraging the development of fair consumer sales practices. IC 1971, 24-5-0.5-1 (Burns Code Ed.).

This statute codifies the elements of common law fraud. Compare IC 1971, 24-5-0.5-3(a)(5), *supra* (trial court's judgment), and IC 1971, 24-5-0.5-4(a), *supra* n.4, with *Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119. Therefore we may turn to decisions interpreting common law fraud as aids in construing this statute.

All who knowingly enter a fraudulent scheme become liable for the harm caused by the scheme—even if their part of the scheme does not entail making fraudulent representations. *Grover* v. *Cavanaugh* (1907), 40 Ind. App. 340, 82 N.E. 104.

The State produced evidence to show that appellant Robert Schmidt participated in the unlawful conduct in this case by lending his signature to the application for authority to work on Mrs. Monahan's chimney and by collecting Mrs. Mitchell's payment. Both of these acts made possible the damages suffered by these consumers, which damages were essential to a remedy under the act enforced. IC 1971, 24-5-0.5-4(a), *supra* n.4.

Also, the trial court's decree extending to appellant Robert Schmidt—a corporation president who took part in its business functions—served to promote the policy of the statute enforced by encouraging him to develop fair consumer sales practices for the corporation.

We therefore conclude that the trial court did not err in including appellant Robert Schmidt in its injunction.

We find the trial court's decree to be erroneous only in its failure to specify the amount of refund to each consumer. We hereby reverse that portion of the trial court's judgment ordering a refund to Mrs. Virgie Mitchell. We remand this cause to the trial court with instructions to correct its judgment to order defendants to refund $1,407 to Mrs. Frank Monahan and to refund $713 to Mrs. Ora Stutsman.

After the trial court amends its judgment to conform to this opinion, said judgment is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 354 N.E.2d 247.