The METROPOLITAN DEVELOPMENT COMMISSION OF MARION COUNTY, Appellant (Plaintiff Below),

v.

Robert T. MULLIN and Robert T. Mullin d/b/a Robert T. Mullin Agency, Appellee (Defendant Below).

No. 2–577A213.

Court of Appeals of Indiana, Second District.

Oct. 15, 1979.

Larry F. Whitham and Fred L. Jones, Asst. Corporation Counsels, Indianapolis, for appellant (plaintiff below).

Carl J. Meyer and Robert L. Hartley, Jr., Bredell, Martin, McTurnan & Meyer Indianapolis, for appellee (defendant below).

YOUNG, Judge.

## MEMORANDUM DECISION

The Metropolitan Development Commission (Commission) brought this action to enjoin the alleged violation of a zoning ordinance. The trial court denied relief. We reverse.

The Commission alleged that Robert T. Mullin, et al. (Mullin) owned a house at 631 East 86th Street in Indianapolis. The use of the house is subject to a certain D–3 zoning ordinance. This classification basically requires that the property be used for residential purposes. However, provision is made for certain "home occupations":

"A. *PERMITTED HOME OCCUPATIONS*

"Certain professions and domestic occupations, crafts and services defined below as 'permitted home occupations' shall be permitted in all Dwelling Districts (except the D–11 District) and in any other zoning district in Marion County permitting dwelling uses, provided that each such home occupation complies with all requirements set forth in section 2.16, B hereof.

"Professions and domestic occupations, crafts or services which, as typically carried out, can be conducted in a dwelling without impairment of the use thereof as a place of residence and with no

detrimental effect upon adjacent residential properties, are permitted home occupations. Examples of professional services which constitute permitted home occupations include law, medicine, dentistry, architecture, engineering, real estate brokerage, tutoring, writing, painting, music instruction, photography and services such as are provided by clergymen, insurance agents, notaries public and manufacturer's agents. Examples of domestic occupations, crafts and services which constitute permitted home occupations include dressmaking, millinery, sewing, tailoring, weaving, hair grooming, washing, ironing and cabinet making."

Section B of the ordinance sets forth seventeen restrictions applicable to home occupations. For purposes of this appeal we need focus only upon the first restriction. It states that the "primary use of the dwelling unit shall remain residential." The judgment of the trial court does not appear to have fully considered this restriction, if at all.

At the trial of this cause it was brought out that Mullin conducted an insurance business at the residence in question. The crucial issue, therefore, is to determine whether this business was conducted at a sufficiently small scale so to remain compatible with the restriction that the primary use of the residence remain residential. Annot., 73 A.L.R.2d 439 (1960); 101 C.J.S. Zoning § 177 (1958).

■ Our standard of review is to determine whether the trial court abused its discretion by failing to grant injunctive relief. *Madison Plaza, Inc. v. Shapira Corp.*, (1979) Ind.App., 387 N.E.2d 483, 487; *Indiana Alcoholic Bev. Comm'n v. State ex rel. Harmon*, (1976) Ind.App., 355 N.E.2d 450, 453; *Clark Realty, Inc. v. Clarke*, (1976) Ind.App., 354 N.E.2d 779, 781. An abuse of discretion is present only if the trial court's decision is clearly against logic. When the exercise of that discretion turns upon whether certain facts have been established by the evidence, then we also operate within the limitation that the court's findings will not be disturbed unless clearly erroneous. *Schmidt Enterprises, Inc. v. State*, (1976) Ind.App., 354 N.E.2d 247, 252.

The testimony of defendant's own witnesses demonstrates that the primary use is not residential. Defendant's witness W. M. Ireland stated on cross-examination that "[t]he living room is being used for a reception room and office." Of the two bedrooms in the house, this witness said that one of them "is now an office." Further, he agreed with the statement that one of the bedrooms as well as the living room "are basically offices."

Mullin's testimony is no different. He stated that the living room contained his secretary's desk, two filing cabinets, and other assorted items. These items would be consistent with the use of the structure either as a residence or as an office. The room which "was originally a dining room" currently contains a desk. The desk is used as a surface upon which to stack materials and as a place to eat. In the kitchen there is in addition to a stove and refrigerator "a small photocopy machine sitting on the side counter." One of the two bedrooms he uses "primarily for my office."

■ This testimony reveals that in this two bedroom house, one of the bedrooms serves as an office. The living room serves as an office and reception room. The dining room is used for some office purposes. The same is true of the kitchen. In light of all this we are forced to conclude that the primary use of this structure is not residential.

■ The defendant has emphasized that much of his personal life revolves around the house. He attempted to prove that it qualifies as his legal residence. Accepting all this as true, we note that this proof is directed at those additional restrictions within the ordinance which require that the defendant make the residence the primary center of his "home life." None of this

proof bears upon the restriction discussed above, namely, that the "primary use of the dwelling unit shall remain residential." The fact that the defendant may prefer to spend much of his personal life in a structure which is an office cannot serve to circumvent the additional requirement of the ordinance that the primary use shall remain residential. Acceptance of the defendant's position would lead to the conclusion that anyone could convert a residence to an office and evade the ordinance so long as he then chose also to live in it.

■ An additional issue should be addressed. The trial court on remand will need to frame appropriate injunctive relief. In a situation such as this it may become difficult to word a decree affirmatively to require the defendant to comply with the ordinance and its seventeen restrictions. If this situation should arise, then it may be appropriate to word the decree negatively to require the defendant to cease the violation of the ordinance and permit him "to select whatever means he chooses to produce that result, thus relieving the court of the difficult problem of selecting the method to be adopted . . . ." H. McCLINTOCK, PRINCIPLES OF EQUITY § 30, (2d ed. 1948).

Reversed.

MILLER, P. J., and CHIPMAN, J., concur.