Fred A. SIMPSON, Sr. and Thelma H. Simpson, Appellants (Defendant–Counterclaimants below),

v.

AETNA FINANCE COMPANY, d/b/a ITT Financial Services, Thorp Credit, Inc. of Indiana and Thorp Credit; Inc., Appellees (Plaintiff–Counterdefendant below).

No. 49A04–8707–CV–225.

Court of Appeals of Indiana, Third District.

May 31, 1988.

Rehearing Denied Aug. 9, 1988.

James McNeal, Lowe Gray Steele & Hoffman, Indianapolis, for appellants.

Stephen J. Hyatt, Lawrence M. Reuben, Indianapolis, for appellees.

GARRARD, Presiding Judge.

Fred and Thelma Simpson appeal from a judgment of foreclosure in favor of ITT Financial Services. They raise two issues:

1) whether the trial court erred in rejecting their affirmative defense of fraud; and

2) whether the trial court erred in denying their counter-claims for violation of federal and state disclosure statutes.

We affirm.

On both of the issues presented the Simpsons are appealing from a negative judgment. As such, the trial court's decision may be reversed only where the evidence is without conflict and leads to but

one conclusion and that conclusion is opposite to the one reached by the trial court. *Hebel v. Conrail* (1985), Ind., 475 N.E.2d 652, 662. The evidence in this case does not lead to such a conclusion.

In January of 1983, the Simpsons were told by their son, Louis, that he had an investment for them but it was necessary that they go to an ITT Financial Services office to sign some documents. When the Simpsons arrived at the office at closing time they met with Tony Harris who stated "This is a really good investment. I wish I could get my parents into this." Although Harris was the office's branch manager, Mrs. Simpson testified that she did not know that he had any connection with that office when she and her husband signed the documents that he gave them. The Simpsons signed the documents without reading them. One of the documents they signed was a mortgage which covered their residence and rental property they owned.[1]

During March of 1983, Louis told the Simpsons that they would have to sign some additional papers in order to begin receiving checks from the investment he had made for them. Mrs. Simpson met Louis at a second ITT office and, without reading it, signed a mortgage on the same property covered by the January mortgage. Mr. Harris was not present. Mr. Simpson signed the new mortgage and also signed a promissory note although it is not clear from the record exactly when or where he executed these documents. ITT relied upon the March 1983 note and mortgage at trial.

The Simpsons received monthly checks for $100—$125 for approximately one year. Additionally, they received notice that a $1000.00 mortgage held by Railroadmen's had been paid off and Louis simply explained "it had been taken care of." Sometime during the summer of 1985, Mrs. Simpson received a telephone call from Kathleen Lacy, an ITT employee, who told them their $700.00 payment was due. Although the Simpsons did not know to what

Ms. Lacy was referring, they went to the ITT office where they viewed loan and mortgage documents containing their signatures. Ms. Lacy explained that they had not been contacted previously about making payments because Louis had made them. The Simpsons subsequently made the $700.00 payment and contacted Louis who stated he would "straighten things out." The Simpsons received a check refunding their $700.00 payment and did nothing further on the matter until July 1986 when they received notice of this lawsuit.

The Simpsons first claim that the trial court erred in rejecting their affirmative defense of fraud. "The essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying upon it." *First Nat. Bank of New Castle v. Acra* (1984), Ind. App., 462 N.E.2d 1345, 1348 citing *Baker v. American States Ins. Co.* (1981), Ind.App., 428 N.E.2d 1342. Assuming that the Simpsons sufficiently proved the other elements, the trial court was not bound to conclude that they relied upon ITT in signing the note and mortgage upon which the suit was based. First, no evidence was introduced which indicated they spoke to anyone connected with ITT when they signed the March 1983 note and mortgage. Secondly, even if those documents were signed as a result or part of the January incident, Mrs. Simpson testified that she did not know whether any relationship existed between Harris and ITT when they signed the January mortgage. Hence, even though Harris was in fact an agent of ITT, the Simpsons could not have relied upon such a relationship when they signed the documents. Thirdly, no evidence was introduced showing that the Simpsons actually relied upon any statements made by Harris in signing the original mortgage. The burden is upon the party claiming

---

1. The parties refer to a note being signed with the January mortgage but the record does not contain a copy of it.

fraud to establish each element of the affirmative defense. Indiana Rules of Procedure, Trial Rule 8(C). Given the Simpsons' lack of evidence on the reliance element the trial court could properly have rejected the defense in this case.[2]

■ The Simpsons next claim that the trial court erred in denying their counterclaims based upon violations of federal and state disclosure statutes. Neither of the statutes upon which the Simpsons rely is applicable to the transaction involved in this case.

The federal statute requires that certain disclosures be made where the transaction involved is a consumer lease or a consumer credit transaction. 15 U.S.C. § 1631 (1982).

The adjective 'consumer' used with reference to a consumer credit transaction, characterizes the transaction as one in which the party to whom the credit is offered or extended is a natural person, and the money, property or services which are the subject of the transaction are primarily for personal, family or household purposes.

15 U.S.C. § 1602(h) (1982). Similarly, the Indiana statute requires certain disclosures where the transaction is one involving a consumer loan. IC 24-4.5-3-102 (1982 & Supp.1987). A consumer loan is defined as one in which "the debt is incurred primarily for a personal, family, household or agricultural purpose." IC 24-4.5-3-104(b) (1982). Although the Simpsons contend that the debt was for a "family purpose" because the loan proceeds were given to their son so that he could accomplish a gift to them as his parents, the Simpsons continually referred to the transaction as one

involving an investment. This characterization indicates that the loan was not made for family but for business purposes.[3] Such transactions are specifically excepted from the federal statute, 15 U.S. C. § 1603 (1982) and have been judicially excluded from coverage under Indiana's statute. *Hall v. Owen County State Bank* (1977), 175 Ind.App. 150, 370 N.E.2d 918. The trial court therefore properly rejected the Simpsons' counterclaim.

Affirmed.

HOFFMAN and CONOVER, JJ., concur.

---

**2.** The Simpsons cite *Schmidt Enterprises, Inc. v. State* for the proposition that all who knowingly enter a fraudulent scheme are liable for the harm which results even if their part in the scheme does not involve making false representations. (1976) 170 Ind.App. 628, 354 N.E.2d 247. While we agree with this proposition, it is inapplicable to this case because the Simpsons did not allege that ITT knowingly entered the fraudulent scheme perpetrated by Louis. While Harris may have been involved in the scheme and therefore liable, the Simpsons admitted that they did not assume that Harris was connected to the lending institution. Absent such an as-

sumption, we can not impute any of his acts to the lending institutions involved in this case.

**3.** We note that depending upon the circumstances, an investment may be considered for personal rather than business purposes under disclosure statutes. *See Thorns v. Sundance Properties* (9th Cir.1984), 726 F.2d 1417. The Simpsons, however, did not argue at trial or in their brief that the investment in this case was for personal purposes. The issue, therefore, is waived. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).